IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

|  |  |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>    v.<br><br>BIG RIVER ZINC CORP.,<br><br>    Defendant. | )<br>)<br>)<br>)<br>)<br>) Civil Action No.  3:10-cv-00276-DRH-CJP<br>)<br>)<br>)<br>)<br>) |

COMPLAINT

The United States of America, by authority of the Attorney General of the United States and through the undersigned attorneys, acting at the request of the Administrator of the United States Environmental Protection Agency ("EPA"), alleges as follows:

NATURE OF ACTION

1.       This is a civil action brought against the Big River Zinc Corporation ("Defendant") pursuant to Section 113(b) of the Clean Air Act ("CAA"), 42 U.S.C. § 7413(b), for injunctive relief and assessment of civil penalties for violations of the New Source Performance Standards ("NSPS") of the CAA, 42 U.S.C. § 7411, and the NSPS regulations codified at 40 C.F.R. Part 60.  The violations occurred at a plant in Sauget, Illinois, which is owned and operated by the Defendant.

JURISDICTION AND VENUE

2.       This Court has jurisdiction of the subject matter of this action under 28 U.S.C. §§ 1331, 1345, and 1355, and Section 113(b) of the CAA, 42 U.S.C. § 7413(b).

3. The U.S. Department of Justice has authority to bring this civil enforcement action under 28 U.S.C. §§ 516 and 519, and under Section 305 of the CAA, 42 U.S.C. § 7605.

4. Venue for this civil action properly lies in this district under Section 113(b) of the CAA, 42 U.S.C. § 7413(b), and 28 U.S.C. §§ 1391(b)(c) and 1395(a) because the violations occurred in this District, and because the Defendant resides in this District.

## NOTICE TO THE STATE

5. The United States has give notice of the commencement of this action to the Illinois Environmental Protection Agency ("IEPA") pursuant to Section 113(b) of the CAA, 42 U.S.C. § 7413(b).

## THE DEFENDANT

6. Defendant is a corporation organized and existing under the laws of Illinois with its headquarters located at 2401 Mississippi Avenue, Sauget, Illinois 62201.

7. At all times relevant to this action, Defendant owned and operated a zinc smelter facility located at Route 3 and Monsanto Avenue, Sauget, Illinois 62201-1078 (hereinafter "Sauget facility").

8. Defendant is a "person" within the meaning of Section 302(e) of the CAA, 42 U.S.C. § 7602(e).

## STATUTORY AND REGULATORY BACKGROUND

A) <u>Statutory Provisions</u>

9. Section 111(b) of the CAA, 42 U.S.C. § 7411(b), requires EPA to publish a list of categories of sources which, in EPA's judgment, cause or contribute significantly to air pollution that may reasonably be anticipated to endanger public health or welfare, and to promulgate

standards of performance for new stationary sources within these categories. These standards are known as "new source performance standards" or "NSPS."

10. The NSPS are national technology-based performance standards for air pollutant sources constructed or modified after a specified date. The purpose of the standards is to ensure that all new or modified sources of air pollutants will be designed to meet emission limitations achievable through the application of the best technological system for emission reduction that the Administrator determines has been adequately demonstrated.

11. Section 111(e) of the CAA, 42 U.S.C. § 7411(e), prohibits the owner or operator of any new source from operating such source in violation of any applicable NSPS.

12. Section 113(b) of the CAA, 42 U.S.C. § 7413(b), authorizes the United States to initiate a civil action seeking a permanent or temporary injunction, or assessment of a civil penalty, or both, against the owner or operator of any source that fails to comply with Section 111 or applicable NSPS requirements.

13. Pursuant to Section 113(b) of the CAA, 33 U.S.C. § 7413(b), the Court may assess a civil penalty not to exceed $25,000 per day for each violation of the NSPS requirements or prohibitions. Pursuant to the Federal Civil Penalties Inflation Adjustment Act of 1990 (28 U.S.C. § 2461 notes) and 40 C.F.R. § 19.4, the Court may assess a civil penalty up to $27,500 per day for each violation occurring between January 30, 1997 and March 15, 2004, to assess a civil penalty up to $32,500 per day for each violation occurring between March 15, 2004 and January 12, 2009, and to assess a civil penalty up to $37,500 for each day thereafter.

B) <u>Regulatory Provisions</u>

14. In 1976, EPA promulgated standards of performance for primary zinc smelters,

which were codified at 40 C.F.R. Part 60, Subpart Q (hereinafter "Subpart Q").

15. Subpart Q defines a "primary zinc smelter" as being any installation engaged in the production, or any intermediate process in the production, of zinc or zinc oxide from zinc sulfide ore through the use of pyrometallurgical techniques.

16. Subpart Q establishes requirements applicable to specific "affected facilities" at primary zinc smelters, including "roasters" that are constructed or modified after October 16, 1974.

17. A "roaster" is defined by Subpart Q to mean any apparatus in which a zinc sulfide ore concentrate charge is heated in the presence of air to eliminate a significant portion (more than 10 percent) of the sulfur contained in the charge.

18. Subpart Q prohibits any roaster constructed or modified after October 16, 1974 from discharging into the atmosphere any gases which contain $SO_2$ in excess of 0.065 percent by volume, which is equal to 650 parts per million ("ppm").

19. Subpart Q requires the owner or operator of a primary zinc smelter to comply with this standard if the owner commences with construction of a roaster after October 16, 1974 – the date that EPA first proposed the NSPS for primary zinc smelters. Under 40 C.F.R. § 60.2, the term "construction" means the "fabrication, erection or installation of an affected facility."

20. Any owner or operator of a primary zinc smelter subject to Subpart Q must provide notification to EPA of (1) the date of commencement of construction of an affected facility no later than 30 days after such date and (2) the date of initial startup of an affected facility within 15 days after such date. 40 C.F.R. §§ 60.7(a)(1) and (3).

21. Pursuant to 40 C.F.R. § 60.8, the owner or operator of the primary zinc smelter

must conduct performance tests and furnish EPA with a written report of the results of such tests within 60 days after achieving the maximum production rate at which the affected facility will be operated, but not later than 180 days after initial startup of such facility.

## GENERAL ALLEGATIONS

22. The Sauget plant owned and operated by Defendant is a "primary zinc smelter" as defined by 40 C.F.R. § 60.171(a).

23. At the time that EPA promulgated Subpart Q in January of 1976, Defendant operated two roasters at the Sauget plant. Each roaster met the definition for "roaster" set forth at 40 C.F.R. § 60.171(b), but since each roaster was an "existing facility" as defined by 40 C.F.R. § 60.170(a), Defendant was not required to comply with the emissions standards for $SO_2$ set forth in Subpart Q.

24. Defendant continued to operate its two roasters until 2002 when it decided to replace them. At that time, the roasters had been in operation for over 35 years.

25. On June 28, 2002, Defendant shut down the Sauget facility and, over the course of the next 90 days, demolished its roasters and replaced them with two new roasters. This action constituted "construction" of an affected facility under Subpart Q (40 C.F.R. § 60.170(b)). As a result, Defendant became subject to the NSPS requirements and prohibitions set forth in Subpart Q, but it did not provide EPA with notice of the commencement of construction of the roasters as required by 40 C.F.R. § 60.7(a)(1).

26. On or around September 30, Defendant initiated start-up of the new roasters, but did not provide notice to EPA of startup as required by 40 C.F.R. § 60.7(a)(3).

27. No later than 180 days after the start-up of the new roasters, Defendant was

required under 40 C.F.R. § 60.8 to conduct performance tests of the new roasters and furnish the EPA Administrator with a written report of the results of the such performance tests. Defendant did not conduct a performance test in accordance with 40 C.F.R. § 60.8, and therefore, it did not provide the results of such a test to EPA.

28.     After the roasters reached their maximum production rate, Defendant emitted $SO_2$ from the roasters into the atmosphere at a concentration that exceeded the emission limit of 650 ppm set forth in Subpart Q.

29.     On November 19 - 21, 2002, EPA conducted an inspection of the Sauget plant. Based upon this inspection, EPA issued a finding of violation ("FOV") to Defendant on August 15, 2003, informing Defendant that it was in violation of Section 111(e) of the CAA.

30.     Since receiving the FOV, Defendant has made no changes to its equipment to bring the facility into compliance with the performance standards for primary zinc smelters codified at Subpart Q.

31.     Defendant has not operated either of its roasters since February of 2006.

## CLAIMS FOR RELIEF

### First Claim for Relief:
### Violation of Emission Limit for Sulfur Dioxide
### Emitted by Primary Zinc Smelter

32.     Paragraphs 1 through 31 are realleged and incorporated herein by reference.

33.     Defendant was required to comply with the NSPS emission limit for Primary Zinc Smelters set forth at Subpart Q (40 C.F.R. § 60.173(a)) no later than February 19, 2003 – the latest date by which Defendant was required to complete performance tests of its new roasters and furnish a written report to EPA in accordance with 40 C.F.R. § 60.8.

34. From February of 2003 to February of 2006, Defendant violated the NSPS emission limit for Primary Zinc Smelters (40 C.F.R. § 60.173(a)) on numerous occasions by emitting $SO_2$ from its roasters into the atmosphere at a concentration greater than 650 ppm.

35. The Defendant has not yet decided whether it will permanently shut down its zinc roasting operations, informing the United States that the company may wish to restart one or more roasters for the purpose of roasting zinc sulfide ore concentrate.

36. In the event that Defendant resumes zinc roasting operations, it will continue to violate the NSPS emission limit for Primary Zinc Smelters (40 C.F.R. § 60.173(a)) by emitting $SO_2$ from its roasters into the atmosphere at a concentration greater than 650 ppm.

37. The acts and omissions described above constitute violations of Section 111(e) of the CAA, 42 U.S.C. § 7411(e), and 40 C.F.R. § 60.173(a), and, as a result, BRZ is subject to injunctive relief and civil penalties under Section 113(b) of the CAA, 42 U.S.C. § 7413(b).

Second Claim for Relief:
Violation of Notice Requirement
for the Date of Construction of Roasters

38. Paragraphs 1 through 31 are realleged and incorporated herein by reference.

39. Pursuant to 40 C.F.R. § 60.7(a)(1), Defendant was required to provide notice of the date of the commencement of construction of the roasters on or near July 26, 2002, which was approximately 30 days after Defendant commenced with construction of the roasters.

40. Defendant failed to provide notice of the date of the commencement of construction of the roasters as required by 40 C.F.R. § 60.7(a)(1).

41. The acts and omissions described above constitute violations of Section 111(e) of the CAA, 42 U.S.C. § 7411(e), and 40 C.F.R. § 60.7(a)(1), and, as a result, BRZ is subject to

injunctive relief and civil penalties under Section 113(b) of the CAA, 42 U.S.C. § 7413(b).

### Third Claim for Relief:
### Violation of Notice Requirement
### of Initial Startup of Roasters

42. Paragraphs 1 through 31 are realleged and incorporated herein by reference.

43. Pursuant to 40 C.F.R. § 60.7(a)(3), Defendant was required to provide notice of the initial startup of the roaster on or near October 15, 2002, which was approximately 15 days after the date of startup of the new roasters.

44. Defendant failed to provide notice of the date of the initial startup of the roasters in violation of 40 C.F.R. § 60.7(a)(3).

45. The acts and omissions described above constitute violations of Section 111(e) of the CAA, 42 U.S.C. § 7411(e), and 40 C.F.R. § 60.7(a)(3), and, as a result, BRZ is subject to injunctive relief and civil penalties under Section 113(b) of the CAA, 42 U.S.C. § 7413(b).

### Fourth Claim for Relief:
### Violation of Requirement to conduct
### Performance Test and Provide Written Report

46. Paragraphs 1 through 31 are realleged and incorporated herein by reference.

47. Pursuant to 40 C.F.R. § 60.8, Defendant was required to conduct performance tests of the roasters and furnish EPA with the written results of such tests on or near February 19, 2003, which was approximately 180 days after Defendant initiated the startup of its new roasters.

48. To date, Defendant has failed to conduct performance tests of the roasters and to provide a written reports of the results of the tests to EPA as required by 40 C.F.R. § 60.8.

49. The acts and omissions described above constitute violations of Section 111(e) of the CAA, 42 U.S.C. § 7411(e), and 40 C.F.R. § 60.8, and, as a result, BRZ is subject to

injunctive relief and civil penalties under Section 113(b) of the CAA, 42 U.S.C. § 7413(b).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, United States of America, respectfully prays that the Court:

1. Permanently enjoin Defendant from operating the roasters at its Sauget plant, except in accordance with the Clean Air Act and any applicable regulatory requirements;

2. Order Defendant to remedy its past violations by, among other things, requiring Defendant to install, as appropriate, the control technology for $SO_2$ emissions from roasters; and

3. Assess a civil penalty up to $27,500 per day for each violation occurring between January 30, 1997 and March 15, 2004, to assess a civil penalty up to $32,500 per day for each violation occurring between March 15, 2004 and January 12, 2009, and to assess a civil penalty up to $37,500 for each day thereafter.

Respectfully Submitted,

FOR THE UNITED STATES:

_____
W. BENJAMIN FISHEROW
Deputy Chief
Environmental Enforcement Section
Environment and Natural Resources Division

_____
JOSEPH W.C. WARREN
Environmental Enforcement Section
Environment and Natural Resources Division
Department of Justice
P.O. Box 7611
Washington, D.C. 20530
(202) 616-1303

        A. COURTNEY COX
United States Attorney
Southern District of Illinois

WILLIAM E. COONAN
Assistant U.S. Attorney
Southern District of Illinois
Nine Executive Drive
Fairview Heights, Illinois 62208-1344
(618) 628-3700

OF COUNSEL:

LOUISE GROSS
Associate Regional Counsel
U.S. EPA, Region 5 (C-14J)
77 W. Jackson Boulevard
Chicago, IL 60604-3590