**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS**

|  |  |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 3:10-cv-00276-DRH-CJP |
| | ) |
| | ) |
| BIG RIVER ZINC CORP., | ) |
| | ) |
| Defendant. | ) |

**CONSENT DECREE**

## TABLE OF CONTENTS

I.      Jurisdiction and Venue . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

II.     Applicability . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

III.    Definitions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

IV.     Civil Penalty . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

V.      Compliance . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

        A.  Conditions for Resuming Zinc Roasting Operations . . . . . . . . . . . . . . . . . . . . . 8

        B.  Permanent Shutdown of Zinc Roasting Operations . . . . . . . . . . . . . . . . . . . . . . 9

        C.  Installation of Scrubber System, Compliance with Emission Limits
            and Incorporation of Requirements into a Federally Enforceable State
            Implementation Plan or Construction Permit . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

        D.  Continuous Emission Monitoring System . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

        E.  Approval of Deliverables . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

VI.     Permits . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

VII.    Operation of Roasters for Other Purposes . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

VIII.   Reporting Requirements . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

IX.     Stipulated Penalties . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

X.      Force Majeure . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   23

XI.     Dispute Resolution . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   24

XII.    Information Collection and Retention . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   26

XIII.   Effect of Settlement / Reservation of Rights . . . . . . . . . . . . . . . . . . . . . . . . . . .   28

XIV.    Costs  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

XV.     Notices . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .30

i

XVI.    Effective Date ........................................................ 32

XVII.   Retention of Jurisdiction ............................................. 32

XVIII.  Modification ......................................................... 32

XIX.    Termination .......................................................... 32

XX.     Public Participation ................................................. 34

XXI.    Signatories/Service .................................................. 35

XXII.   Integration .......................................................... 35

XXIII.  Final Judgment ....................................................... 36

XXIV.   Appendices ........................................................... 36

        A.  Process Design Specifications for the Scrubber System

        B.  Test-and-Set Protocol

        C.  Computation of 365-Day Rolling Average

ii

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | Civil Action No. *[_____]* |
| v. | ) | |
| | ) | |
| | ) | |
| BIG RIVER ZINC CORP., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## CONSENT DECREE

A.     Plaintiff, the United States of America, on behalf of the United States Environmental Protection Agency ( "EPA"), has filed, concurrently with the lodging of this Consent Decree, a Complaint against Defendant, Big River Zinc Corp. ("BRZ" or "Defendant") pursuant to Section 113(b) of the Clean Air Act, 42 U.S.C. § 7413(b), as amended ("the Act"), seeking civil penalties and injunctive relief for violations by BRZ of applicable provisions of the New Source Performance Standards ("NSPS") of the Act, 42 U.S.C. § 7411, and of regulations promulgated thereunder at 40 C.F.R. Part 60, Subpart Q.

B.     The Complaint alleges that BRZ violated the Act and applicable regulations at its primary zinc smelter in Sauget, Illinois ("Sauget Facility") by (1) failing to comply with the sulfur dioxide emission limit for Roasters set forth at 40 C.F.R. § 60.173; (2) failing to provide notification of its plans to reconstruct its Roasters as required by 40 C.F.R. § 60.15(d); (3) failing to provide written notification of the date of construction of the new Roasters as required by 40

- 1 -

C.F.R. § 60.7(a)(1); (4) failing to provide written notification of the date of initial startup of the new Roasters as required by 40 C.F.R. § 60.7(a)(2), and (5) failing to conduct performance tests of the new Roasters and providing a report of the test results to EPA as required by 40 C.F.R. § 60.8.

     C.     BRZ does not admit any liability to the United States arising out of the transactions or occurrences alleged in the Complaint.

     D.     The Parties recognize, and the Court by entering this Consent Decree finds, that this Consent Decree has been negotiated by the Parties in good faith and will avoid litigation between the Parties and that this Consent Decree is fair, reasonable, and in the public interest.

     NOW, THEREFORE, before the taking of any testimony, without the adjudication or admission of any issue of fact or law except as provided in Section I, below, and with the consent of the Parties, IT IS HEREBY ADJUDGED, ORDERED, AND DECREED as follows:

## I.   <u>JURISDICTION AND VENUE</u>

     1.     This Court has jurisdiction of the subject matter of this action pursuant to 28 U.S.C. §§ 1331, 1345 and 1355 and pursuant to Section 113(b) of the Act, 42 U.S.C. § 7413(b), and over the Parties.  Venue lies in this District pursuant to Section 113(b) of the Act, 42 U.S.C. § 7413(b), and under 28 U.S.C. § 1391(b) and (c) because BRZ owns and operates a facility in this District, the violations alleged in the Complaint are alleged to have occurred in this District, and the Defendant conducts business in this District.

     2.     For purposes of this Consent Decree, Defendant agrees that the Complaint states claims upon which relief may be granted pursuant to Section 113(b) the Act, 42 U.S.C. § 7413(b).

## II.  **APPLICABILITY**

3.      The obligations of this Consent Decree apply to and are binding upon the United States and upon Defendant and any successors, assigns, or other entities or persons otherwise bound by law.

4.      No transfer of ownership or operation of the Sauget Facility, whether in compliance with the procedures of this Paragraph or otherwise, shall relieve BRZ of its obligation to ensure that the terms of the Decree are implemented.  At least 30 Days prior to such transfer, BRZ shall provide a copy of this Consent Decree to the proposed transferee and shall simultaneously provide written notice of the prospective transfer, together with a copy of the proposed written agreement, to EPA Region 5, the United States Attorney for the Southern District of Illinois, and the United States Department of Justice, in accordance with Section XV (Notices) of this Decree.  Any attempt to transfer ownership or operation of the Sauget Facility without complying with this Paragraph constitutes a violation of this Decree

5.      BRZ shall provide a copy of this Consent Decree to all officers, employees, and agents whose duties might reasonably include compliance with any provision of this Decree, as well as to any contractor retained to perform work required under this Consent Decree.  BRZ shall condition any such contract upon performance of the work in conformity with the terms of this Consent Decree.

6.      In any action to enforce this Consent Decree, BRZ shall not raise as a defense the failure by any of its officers, directors, employees, agents, or contractors to take any actions necessary to comply with the provisions of this Consent Decree.

## III. DEFINITIONS

7.     Terms used in this Consent decree that are defined in the Act or in regulations promulgated pursuant to the Act shall have the meanings assigned to them in the Act or such regulations, unless otherwise provided in this Decree. Whenever the terms set forth below are used in this Consent Decree, the following definitions shall apply:

a.     "BRZ" shall mean Big River Zinc Corporation and its successors and assigns;

b.     "CEMS" or "Continuous Emission Monitoring System" equipment shall mean the continuous monitoring system defined at 40 C.F.R.§ 60.175 that continuously measures and records sulfur dioxide emissions discharged into the atmosphere from any Roaster subject to 40 C.F.R. § 60.173.

c.     "Complaint" shall mean the complaint filed by the United States in this action;

d.     "Consent Decree" or "Decree" shall mean this Decree and all appendices attached hereto listed in Section XXIV (Appendices).

e.     "Day" shall mean a calendar day unless expressly stated to be a business day.   In computing any period of time under this Consent Decree (other than the 365-Day Rolling Average), where the last day would fall on a Saturday, Sunday, or federal holiday, the period shall run until the close of business of the next business day;

f.     "EPA" shall mean the United States Environmental Protection Agency and any of its successor departments or agencies;

g.     "Effective Date"  shall have the meaning given in Section XVI.

- 4 -

h.    "Long-term Emission Limit" shall mean the emission limit for Stack Gas Sulfur Dioxide, calculated on a 365-Day Rolling Average Basis, that is established in accordance with the Test-and-Set protocol at Appendix B of this Consent Decree.

i.    "Nonattaiment NSR" shall mean the nonattainment area New Source Review (NSR) program within the meaning of Part D of Subchapter I of the Act, 42 U.S.C. §§ 7501-7515, 40 C.F.R. Part 51, and the Illinois State Implementation Plan.

j.    "NSPS" shall mean the standards of performance found at 40 C.F.R. Part 60, including the General Provisions in Subpart A and the requirements for primary zinc smelters in Subpart Q.

k.    "NSPS Emission Limit for Roasters at Primary Zinc Smelters" shall mean the emission limit at 40 C.F.R. § 60.173(a), which is equivalent to 650 ppmvd calculated on a Two-Hour Block Average basis.

l.    "Operating Day" shall mean any Day during which zinc sulfide ore concentrate is fed into at least one Roaster at the Sauget Facility.

m.    "Paragraph" shall mean a portion of this Decree identified by an arabic numeral.

n.    "Parties" shall mean the United States and BRZ.

o.    "ppmvd" shall mean parts per million, volumetric dry.

p.    "PSD" shall mean the Prevention of Significant Deterioration program within the meaning of Part C of Subchapter I of the Act, 42 U.S.C. §§ 7470-7492, 40 C.F.R. Part 52, and the Illinois State Implementation Plan.

q.      "Roaster" shall mean a type of furnace (such as BRZ's fluid-bed roasters) in which a zinc sulfide ore concentrate charge is heated in the presence of air to eliminate a significant portion (more than 10 percent) of the sulfur contained in the charge.

r.      "Sauget Facility" shall mean the primary zinc smelter currently owned and operated by BRZ and located at 2401 Mississippi Avenue, Sauget, Illinois 62201.

s.      "Scrubber System" shall mean a pollution control device used to control gaseous emissions into the atmosphere.

t.      "Section" shall mean a portion of this Decree identified by a roman numeral.

u.      "$SO_2$" shall mean the pollutant sulfur dioxide.

v.      "Stack Gas Sulfur Dioxide" shall mean the $SO_2$ emitted into the atmosphere from the stack of the acid plant at the Sauget Facility.

w.      "Startup" shall mean the setting in operation of any Roaster or any control device covered by this Consent Decree.

x.      "Subsection" shall mean a portion of this Decree within a Section that begins with a capital letter.

y.      "Subparagraph" shall mean a portion of this Decree within a Paragraph that begins with a lower-case letter.

z.      "Title V permit" shall mean a permit required by or issued pursuant to the requirements of 42 U.S.C. §§ 7661 - 7661f.

aa.      "Two-Hour Block Average" shall mean the average Stack Gas Sulfur Dioxide concentration calculated in accordance with the method set forth at 40 C.F.R. § 60.175(b).

ab.    "United States" shall mean the United States of America, acting on behalf of U.S. EPA.

ac.    "Zinc Roasting Operations" shall mean the production of calcine by roasting zinc sulfide ore concentrate in one or more Roasters.

ad.    "365-Day Rolling Average" shall mean the average Stack Gas Sulfur Dioxide concentration calculated in accordance with the procedure set forth at Appendix C.

## IV. CIVIL PENALTY

8.    Within thirty (30) calendar days after the Effective Date of this Consent Decree, BRZ shall pay to the Plaintiff as a civil penalty pursuant to Section 113(b) of the Act, 42 U.S.C. § 7413(b), the sum of $250,000 as a civil penalty, together with interest accruing from the date on which the Consent Decree is lodged with the Court, at the rate specified in 28 U.S.C. § 1961 as of the date of lodging.

9.    The civil penalty amount set forth in Paragraph 8 shall be paid by FedWire Electronic Funds Transfer ("EFT") to the U.S. Department of Justice in accordance with written instructions to be provided to BRZ, following lodging of the Consent Decree, by the Financial Litigation Unit of the U.S. Attorney's Office for the Southern District of Illinois, Nine Executive Drive, Fairview Heights, IL 62208 (telephone: 618-628-3730). At the time of payment, BRZ shall send a copy of the EFT authorization form and the EFT transaction record, together with a transmittal letter, which shall state that the payment is for the civil penalty owed pursuant to the Consent Decree in this case, and shall reference the civil action number and DOJ case number 90-5-2-1-08230, to the United States in accordance with Section XV (Notices) of this Decree; by email to acctsreceivable.CINWD@epa.gov; and to:

7

EPA Cincinnati Finance Office
26 Martin Luther King Drive
Cincinnati, Ohio  45268.

10.     BRZ shall not deduct any penalties paid under this Decree pursuant to this Section

or Section IX (Stipulated Penalties) in calculating its federal income tax.

## V.  COMPLIANCE

**A.     Conditions for Resuming Zinc Roasting Operations**

11.     Having ceased its Zinc Roasting Operations in February of 2006, BRZ shall in no

event resume such operations until it meets both of the following conditions: (1) BRZ installs

and makes operational a Scrubber System on its acid plant in accordance with the design

requirements set forth in Appendix A and (2) BRZ installs and makes operational a Continuous

Emissions Monitoring System (CEMS) for Stack Gas Sulfur Dioxide in accordance with

Subsection D below.

12.     No more than five years from the Effective Date of this Consent Decree (plus any

additional time granted under Paragraph 13 below), BRZ shall either (1) satisfy both of the

conditions set forth in the preceding Paragraph 11 and resume Zinc Roasting Operations or     (2)

permanently shut down its Zinc Roasting Operations in accordance with Subsection B below.

13.     Extension of five-year period for resuming Zinc Roasting Operations:  BRZ may

petition EPA for an extension of the five-year period for satisfying the conditions in Paragraph

11 and resuming Zinc Roasting Operations, and EPA may deny or grant this request in its

unreviewable discretion.  In the event that EPA agrees to an extension, and in the event that the

extension materially changes the Consent Decree, the Parties will jointly petition the Court to

modify the Consent Decree. BRZ may not petition EPA for an extension of the five-year period for resuming Zinc Roasting Operations after the five-year period has ended.

14. <u>Savings Clause</u>: Nothing in this Consent Decree constitutes a determination regarding the applicability of any PSD or Nonattainment NSR requirements to the Sauget Facility or any Roaster in the event that BRZ re-commences operation of any Roaster. BRZ shall remain responsible for complying with all requirements of the Act applicable to the Roasters and the Sauget Facility, including any applicable PSD or Nonattainment NSR requirements.

**B.    Permanent Shutdown of Zinc Roasting Operations**

15. If BRZ decides prior to termination of the period for resuming Zinc Roasting Operations under Subsection A that it will not resume Zinc Roasting Operations at any time in the future, BRZ shall promptly notify the United States of this decision in accordance with Section XV (Notices). The permanent shutdown of Zinc Roasting Operations shall occur immediately upon (1) BRZ management's decision not to resume Zinc Roasting Operations at any time in the future or (2) the termination of the time period for resuming Zinc Roasting Operations set forth in Subsection A, provided that BRZ did not resume Zinc Roasting Operations within such time period.

16. Within twenty days of the permanent shutdown of Zinc Roasting Operations, BRZ shall provide notice of this event to EPA in accordance with Section XV (Notices).

17. Within sixty days of the permanent shutdown of Zinc Roasting Operations, BRZ shall surrender (1) all permits to conduct Zinc Roasting Operations and (2) all pollution credits relating to Zinc Roasting Operations.

**C.**  **Installation of Scrubber System, Compliance with Emission Limits
and Incorporation of Requirements into a Federally Enforceable State
Implementation Plan or Construction Permit**

18.     If BRZ shall resume Zinc Roasting Operations in accordance with Paragraph 11,

BRZ shall, upon Startup and continuously thereafter, (1) operate a Scrubber System meeting the

requirements set forth in Appendix A and a CEMs meeting the requirements of Subpart D,

below, whenever Zinc Roasting Operations are being conducted; and (2) comply with all other

requirements of the Act (if any) applicable at the time of the Startup of Zinc Roasting Operations.

19.     Notice of Intent to Resume Roasting Operations:  No later than 60 days before

Startup of Zinc Roasting Operations, BRZ shall provide written notice of its intent to do so to

EPA and Illinois EPA in accordance with Section XV (Notices).

20.     NSPS Emission Limit:  Upon Startup of its Zinc Roasting Operations, BRZ shall

comply with the NSPS Emission Limit for Roasters at Primary Zinc Smelters by emitting a Stack

Gas Sulfur Dioxide concentration equal to, or lower than, 650 parts per million volumetric dry

("ppmvd") on a Two-Hour Block Average basis, which shall be calculated from CEMs data and

recorded daily for 12 consecutive 2-hour periods of each Operating Day.

21.     Long-Term Emission Limit:  Upon Startup of its Zinc Roasting Operations, BRZ

shall commence with the Test-and-Set Protocol at Appendix B for the purpose of establishing a

Long-Term Emission Limit for $SO_2$. After this limit is established, BRZ shall comply with both

the NSPS Emission Limit for Roasters at Primary Zinc Smelters and the Long-Term Emission

Limit.

22.     Other Emission Limits:  BRZ shall also comply with any other applicable

emission limit for $SO_2$ that is more stringent than the emission limits required under Paragraphs

20 and 21.

23. <u>Incorporation of Consent Decree Requirements into a Federally Enforceable Construction Permit or State Implementation Plan</u>: Within 60 days from the establishment of a Long-Term Emission Limit in accordance with the Test-and-Set protocol, BRZ shall apply to the Illinois EPA for either (1) a source-specific amendment to the Illinois State Implementation Plan or (2) a construction permit that is federally enforceable under the Clean Air Act. In either case, BRZ shall include in its application the request that the Illinois EPA establish the following requirements:

　　i.　The requirement that BRZ comply with the NSPS Emission Limit for Roasters at Primary Zinc Smelters described in Paragraph 20;

　　ii.　The requirement that BRZ comply with the Long-Term Emission Limit set by EPA in accordance with the Test-and-Set Protocol in Appendix B;

　　iii.　The requirement that BRZ comply with any other applicable emission limit that may apply under Paragraph 22.

　　iv.　The requirement that BRZ comply with the CEMS operation and maintenance requirements in Subsection D.

　　v.　The requirement that BRZ submit annual reports to Illinois EPA containing the same information that BRZ is required to provide under Section VIII (Reporting Requirements), except for information identified in Paragraphs 36(a) and (b).

**D.  Continuous Emissions Monitoring System (CEMS):**

24.     Prior to resuming its Zinc Roasting Operations, BRZ shall install and make operational a CEMS for the purpose of monitoring Stack Gas Sulfur Dioxide emissions. Except during CEMS breakdowns, repairs, calibration checks, and zero span adjustments, the CEMS shall be operated in accordance with 40 C.F.R. § 60.175(b) at all times that BRZ conducts Zinc Roasting Operations and shall be used to demonstrate compliance with the $SO_2$ emission limits set forth in Subsection C.

25.     Simultaneously with providing notice to EPA and Illinois EPA of BRZ's intent to resume Zinc Roasting Operations, BRZ shall submit to EPA for review and approval a Quality Assurance / Quality Control (QA/QC) protocol that BRZ will follow in calibrating the CEMS. In preparing this protocol, BRZ shall use 40 C.F.R. Part 75. Upon approval by EPA, BRZ shall implement the QA/QC protocol in accordance with the terms set forth therein.

26.     BRZ shall take all steps necessary to avoid CEMS breakdowns and minimize CEMs downtime. This shall include, but is not limited to, operating and maintaining the CEMS in accordance with best practices and maintaining an on-site inventory of spare parts or other supplies necessary to make rapid repairs of the equipment.

**E.  Approval of Deliverables**

27.     After review of any plan, report, or other item that is required to be submitted pursuant to this Consent Decree (including, but not limited to, any submission under the Test-and-Set protocol at Appendix B), EPA shall, in writing: (i) approve the submission; (ii) approve the submission upon specified conditions; (iii) approve part of the submission and disapprove the remainder; or (iv) disapprove the submission.

28.    If the submission is approved pursuant to Paragraph 27, BRZ shall take all actions required by the plan, report, or other document, in accordance with the schedules and requirements of the plan, report, or other document, as approved.  If the submission is conditionally approved or approved only in part, pursuant to Paragraph 27, BRZ shall, upon written direction of EPA, take all actions required by the approved plan, report, or other item that EPA determines are technically severable from any disapproved portions, subject to BRZ's right to dispute only the specified conditions or the disapproved portions, under Section XI (Dispute Resolution) of this Decree

29.    If the submission is disapproved in whole or in part pursuant to Paragraph 27, BRZ shall, within the time specified in this Consent Decree (unless otherwise agreed to in writing by EPA and BRZ), correct all deficiencies and resubmit the plan, report, or other item, or disapproved portion thereof, for approval.

30.    Any stipulated penalties applicable to the original submission, as provided in Section IX (Stipulated Penalties) of this Decree, shall accrue during the period after EPA rejects the submission in whole or in part, but shall not be payable unless the resubmission is untimely or is disapproved in whole or in part; provided that, if the original submission was so deficient as to constitute a material breach of BRZ's obligations under this Decree, the stipulated penalties applicable to the original submission shall be due and payable notwithstanding any subsequent resubmission.

31.    If a resubmitted plan, report, or other item, or portion thereof, is disapproved in whole or in part, EPA may again require BRZ to correct any deficiencies, in accordance with the preceding Paragraphs, or may itself correct any deficiencies, subject to BRZ's right to invoke

13

Dispute Resolution and the right of EPA to seek stipulated penalties as provided in the preceding Paragraphs.

## VI.   **PERMITS**

32.   BRZ shall provide EPA Region 5 and the State of Illinois with a copy of each application for a permit necessary to implement the requirements of this Consent Decree, as well as a copy of any permit proposed as a result of such application, to allow for timely participation in any public comment opportunity. Where any compliance obligation under Section V requires BRZ to obtain a federal, state, or local permit or approval, BRZ shall submit timely and complete applications and take all other actions necessary to obtain all such permits or approvals. BRZ may seek relief under the provisions of Section X (Force Majeure) of this Consent Decree for any delay in the performance of any such obligation resulting from a failure to obtain, or a delay in obtaining, any permit or approval required to fulfill such obligation, if BRZ has submitted timely and complete applications and has taken all other actions necessary to obtain all such permits or approvals.

33.   Modification of Title V Permit:

a.   As soon as practicable, but in no event later than 90 days after the Illinois EPA establishes the requirements set forth in Paragraph 23 by either issuing (1) a source-specific amendment to the Illinois State Implementation Plan or (2) a construction permit that is federally-enforceable under the Clean Air Act, BRZ will submit a complete application to the Illinois EPA to incorporate the following requirements into BRZ's Title V Permit:

i.   The requirement to comply with the NSPS Emission Limit for Roasters at Primary Zinc Smelters described in Paragraph 20;

14

ii.     The requirement to comply with the Long-Term Emission Limit set by EPA in accordance with the Test-and-Set Protocol in Appendix B;

iii.    The requirement to comply with any other applicable emission limit that may apply under Paragraph 22.

iv.     The requirement to comply with the CEMS operation and maintenance requirements in Section V, Subsection D.

v.      The requirement to submit annual reports to Illinois EPA containing the same information that BRZ is required to provide under Section VIII (Reporting Requirements), except for Paragraphs 36(a) and 36(b) of that Section.

b.      The parties agree that the incorporation of the requirements of this Consent Decree into BRZ's Title V Permit shall be in accordance with state Title V rules, including applicable administrative amendment provisions of such rules.

c.      Notwithstanding the reference to Title V permits in this Consent Decree, the enforcement of such permit shall be in accordance with its own terms and the Act. The Title V permit shall not be enforceable under this Consent Decree, although any term or limit established by or under this Consent Decree shall be enforceable under this Consent Decree regardless of whether such term has or will become part of a Title V permit.

### VII.    OPERATION OF ROASTERS FOR OTHER PURPOSES

34.     In the event that BRZ decides to use a Roaster (or both Roasters) for operations other than Zinc Roasting Operations, BRZ shall comply with all applicable laws relating to such operations.

35.     Nothing in the Consent Decree is intended to be construed as a determination by EPA that BRZ may or may not operate one or more of its Roasters for the purposes other than Zinc Roasting Operations.

## VIII.  REPORTING REQUIREMENTS

36.     Within 30 days after the end of each calendar-year quarter (*i.e.*, by April 30, July 30, October 30, and January 30) after lodging of this Consent Decree, until termination of this Decree pursuant to Section XIX (Termination), BRZ shall submit a quarterly report for the preceding quarter that shall include:

a.      A progress report on the status of BRZ's plans with respect to resuming Zinc Roasting Operations or, alternatively, terminating Zinc Roasting Operations on a permanent basis, including the requirement under Paragraph 17 to surrender all permits and pollution credits relating to Zinc Roasting Operations;

b.      In the event that BRZ resumes Zinc Roasting Operations, a progress report on the status of implementing the Test-and-Set Protocol at Appendix B;

c.      A summary of the emissions data, if any, for the Sauget Facility resulting from Zinc Roasting Operations, identifying each instance where the emissions exceeded one or more of the emission limits set forth in Paragraphs 20 to 22;

d.      A description of any problems encountered or anticipated with respect to meeting the requirements of Section V (compliance) and the Test-and-Set Protocol at Appendix B, and

e.      Any such additional matters as BRZ believes should be brought to the attention of EPA.

16

37.     If BRZ violates, or has reason to believe that it may violate, any requirement of this Consent Decree, BRZ shall notify the United States and Illinois EPA of such violation and its likely duration, in writing, within ten working days of the day BRZ first becomes aware of the violation, with an explanation of the violation's likely cause and of the remedial steps taken, or to be taken, to prevent or minimize such violation. If the cause of a violation cannot be fully explained at the time the report is due, BRZ shall so state in the report. BRZ shall investigate the cause of the violation and shall then submit an amendment to the report, including a full explanation of the cause of the violation, within 30 days of the day BRZ becomes aware of the cause of the violation. Nothing in this Paragraph or the following Paragraph relieves BRZ of its obligation to provide the notice required by Section X (Force Majeure) of this Consent Decree.

38.     Whenever any violation of this Consent Decree, or of any applicable permits, or any other event affecting BRZ's performance under this Decree, or the performance of the Sauget Facility, may pose an immediate threat to the public health or welfare or the environment, BRZ shall notify EPA, orally or by electronic or facsimile transmission as soon as possible, but no later than 24 hours after BRZ first knew of the violation or event. This procedure is in addition to the requirements set forth in the preceding Paragraph.

39.     All reports shall be submitted to the persons designated in Section XV (Notices) of this Consent Decree.

40.     Each report submitted by BRZ under this Section shall be signed by an official of the submitting party and include the following certification:

> I certify under penalty of law that this document and all attachments were prepared  under my direction or supervision in accordance with a system designed to assure that qualified personnel properly gather and evaluate the information submitted. Based  on my inquiry of the person or persons who manage the

> system, or those persons directly responsible for gathering the information, the information submitted is, to the best of my knowledge and belief, true, accurate, and complete. I am aware that there are significant penalties for submitting false information, including the possibility of fine and imprisonment for knowing violations.

This certification requirement does not apply to emergency or similar notifications where compliance would be impractical.

41.   The reporting requirements of this Consent Decree do not relieve BRZ of any reporting obligations required by the Act or implementing regulations, or by any other federal, state, or local law, regulation, permit, or other requirement.

42.   Any information provided pursuant to this Consent Decree may be used by the United States in any proceeding to enforce the provisions of this Consent Decree and as otherwise permitted by law.

## IX.  STIPULATED PENALTIES

43.   BRZ shall be liable for stipulated penalties to the United States for violations of this Consent Decree as specified below, unless excused under Section X (Force Majeure).  A violation includes failing to perform any obligation required by the terms of this Decree, including any work plan or schedule approved under this Decree, according to all applicable requirements of this Decree and within the specified time schedules established by or approved under this Decree.

44.    Late Payment of Civil Penalty: The following stipulated penalties shall accrue for each Day that BRZ fails to pay the civil penalty required to be paid under Section IV (Civil Penalty) of this Decree:

| Penalty Per Violation Per Day | Period of Noncompliance |
|---|---|
| $1,000 | 1st Day through 30th Day |
| $2,000 | 31st Day and beyond |

45.    Violation of Conditions for Resuming Zinc Roasting Operations: The following stipulated penalties shall accrue for each Day that BRZ conducts Zinc Roasting Operations in violation of Paragraph 11:

| Penalty Per Violation Per Day | Period of Noncompliance |
|---|---|
| $5,000 | 1st Day through 30th Day |
| $7,000 | 31st Day and beyond |

46.    Violation of NSPS Emission Limit for Roasters at Primary Zinc Smelters: The following stipulated penalties shall accrue per violation per Day for each violation of the NSPS emission limit set forth in Paragraph 20.

    a.    Where the violation is equal to or less than 10% in excess of the NSPS Emission Limit for Roasters at Primary Zinc Smelters:

| Penalty Per Violation Per Day | Period of Noncompliance |
|---|---|
| $2,000 | 1st Day through 30th Day |
| $2,500 | 31st Day and beyond |

   b.  Where the violation is more than 10% in excess of the NSPS Emission Limit

for Roasters at Primary Zinc Smelters.

| Penalty Per Violation Per Day | Period of Noncompliance |
|---|---|
| $2,500 | 1st Day through 30th Day |
| $3,000 | 31st Day and beyond |

47.  Violation of Compliance Milestones

   a.  The following stipulated penalties shall accrue per violation per Day for

each violation of the requirements identified in subparagraph b.

| Penalty Per Violation Per Day | Period of Noncompliance |
|---|---|
| $1,000 | 1st Day through 30th Day |
| $2,000 | 31st Day and beyond |

   b.  The stipulated penalties set forth in subparagraph "a" above shall apply to

violations of the following requirements.

     1.  Requirement relating to the permanent shutdown of Zinc Roasting

       Operations under Section V.B.

     2.  Requirement to provide notice to EPA and Illinois EPA in advance

       of starting Roasting Operations, as set forth at Paragraph 19.

     5.  Requirement to complete and timely submit optimization study, as

       set forth at Paragraph 4.d of the Test-and-Set Protocol.

     6.  Requirement to complete and timely submit demonstration study, as

       set forth at Paragraph 5.c of the Test-and-Set Protocol.

7.    Requirements relating to the continuous emissions monitoring

system set forth at Section V.D.

8.    Requirements relating to permitting as set forth at Section VI.

48.    Violation of Reporting Requirements

The following stipulated penalties shall accrue per violation per Day for each

violation of the reporting requirements set forth at Section VIII.

| Penalty Per Violation Per Day | Period of Noncompliance |
|---|---|
| $300 | 1st through 30th day |
| $500 | 31st day and beyond |

49.    Stipulated penalties under this Section shall begin to accrue on the Day after

performance is due or on the day a violation occurs, whichever is applicable, and shall continue to

accrue until performance is satisfactorily completed or until the violation ceases.  Stipulated

penalties shall accrue simultaneously for separate violations of this Consent Decree.

50.    BRZ shall pay any stipulated penalty within 30 Days of receiving the United States'

written demand.

51.    The United States may, in the unreviewable exercise of its discretion, reduce or

waive stipulated penalties otherwise due it under this Consent Decree.

52.    Stipulated penalties shall continue to accrue as provided in Paragraph 49, during

any Dispute Resolution, but need not be paid until the following:

a.    If the dispute is resolved by agreement or by a decision of EPA that is not

appealed to the Court, BRZ shall pay accrued penalties determined to be owing, together with

21

interest, to the United States within 30 days of the effective date of the agreement or the receipt of EPA's decision or order.

        b.     If the dispute is appealed to the Court and the United States prevails in whole or in part, BRZ shall pay all accrued penalties determined by the Court to be owing, together with interest, within 60 days of receiving the Court's decision or order, except as provided in Subparagraph c, below.

        c.     If any Party appeals the District Court's decision, BRZ shall pay all accrued penalties determined to be owing, together with interest, within 15 days of receiving the final appellate court decision.

53.    BRZ shall pay stipulated penalties owing to the United States in the manner set forth and with the confirmation notices required by Paragraph 9, except that the transmittal letter shall state that the payment is for stipulated penalties and shall state for which violation(s) the penalties are being paid.

54.    If BRZ fails to pay stipulated penalties in accordance with Paragraph 50, BRZ shall be liable for interest on such penalties, as provided for in 28 U.S.C. § 1961, accruing as of the date payment became due. Nothing in this Paragraph shall be construed to limit the United States from seeking any remedy otherwise provided by law for BRZ's failure to pay any stipulated penalties

55.    Subject to the provisions of Section XIII (Effect of Settlement/Reservation of Rights) of this Consent Decree, the stipulated penalties provided for in this Consent Decree shall be in addition to any other rights, remedies, or sanctions available to the United States for BRZ's violation of this Consent Decree or applicable law. Where a violation of this Consent Decree is also a violation of relevant statutory or regulatory requirements, BRZ shall be allowed a credit, for any stipulated penalties paid, against any statutory penalties imposed for such violation.

## X. **FORCE MAJEURE**

56.     "Force majeure," for purposes of this Consent Decree, is defined as any event

arising from causes beyond the control of the BRZ, of any entity controlled by BRZ, or of BRZ's

contractors, that delays or prevents the performance of any obligation under this Consent Decree

despite BRZ's best efforts to fulfill the obligation.  The requirement that BRZ exercise "best efforts

to fulfill the obligation" includes using best efforts to anticipate any potential force majeure event

and best efforts to address the effects of any such event (a) as it is occurring and (b) after it has

occurred, to prevent or minimize any resulting delay to the greatest extent possible.  "Force

Majeure" does not include BRZ's financial inability to perform any obligation under this Consent

Decree.

57.     If any event occurs or has occurred that may delay the performance of any

obligation under this Consent Decree, whether or not caused by a force majeure event, BRZ shall

provide notice orally or by electronic or facsimile transmission to EPA within 72 hours of when

BRZ first knew that the event might cause a delay.  Within seven days thereafter, BRZ shall

provide in writing to EPA an explanation and description of the reasons for the delay; the

anticipated duration of the delay; all actions taken or to be taken to prevent or minimize the delay;

a schedule for implementation of any measures to be taken to prevent or mitigate the delay or the

effect of the delay; BRZ's rationale for attributing such delay to a force majeure event if it intends

to assert such a claim; and a statement as to whether, in the opinion of BRZ, such event may cause

or contribute to an endangerment to public health, welfare or the environment.  BRZ shall include

with any notice all available documentation supporting the claim that the delay was attributable to

a force majeure.  Failure to comply with the above requirements shall preclude BRZ from asserting

any claim of force majeure for that event for the period of time of such failure to comply, and for

any additional delay caused by such failure.  BRZ shall be deemed to know of any circumstance of which BRZ, any entity controlled by BRZ, or BRZ's contractors knew or should have known.

58.    If EPA agrees that the delay or anticipated delay is attributable to a force majeure event, the time for performance of the obligations under this Consent Decree that are affected by the force majeure event will be extended by EPA for such time as is necessary to complete those obligations.  An extension of the time for performance of the obligations affected by the force majeure event shall not, of itself, extend the time for performance of any other obligation.  EPA will notify BRZ in writing of the length of the extension, if any, for performance of the obligations affected by the force majeure event.

59.    If EPA does not agree that the delay or anticipated delay has been or will be caused by a force majeure event, EPA will notify BRZ in writing of its decision.

60.    If BRZ elects to invoke the dispute resolution procedures set forth in Section XI (Dispute Resolution), it shall do so no later than 30 days after receipt of EPA's notice.  In any such proceeding, BRZ shall have the burden of demonstrating by a preponderance of the evidence that the delay or anticipated delay has been or will be caused by a force majeure event, that the duration of the delay or the extension sought was or will be warranted under the circumstances, that best efforts were exercised to avoid and mitigate the effects of the delay, and that BRZ complied with the requirements of Paragraphs 56 and 57, above.  If BRZ carries this burden, the delay at issue shall be deemed not to be a violation by BRZ of the affected obligation of this Consent Decree identified to EPA and the Court.

## XI.  DISPUTE RESOLUTION

61.    Unless otherwise expressly provided for in this Consent Decree, the dispute resolution procedures of this Section shall be the exclusive mechanism to resolve disputes arising

24

under or with respect to this Consent Decree. BRZ's failure to seek resolution of a dispute under this Section shall preclude BRZ from raising any such issue as a defense to an action by the United States to enforce any obligation of BRZ arising under this Decree.

62.   Informal Dispute Resolution.  Any dispute subject to Dispute Resolution under this Consent Decree shall first be the subject of informal negotiations. The dispute shall be considered to have arisen when BRZ sends the United States a written Notice of Dispute. Such Notice of Dispute shall state clearly the matter in dispute. The period of informal negotiations shall not exceed 20 Days from the date the dispute arises, unless that period is modified by written agreement. If the dispute cannot be resolved by informal negotiations, then the position advanced by the United States shall be considered binding unless, within 20 Days after the conclusion of the informal negotiation period, BRZ invokes formal dispute resolution procedures as set forth below.

63.   Formal Dispute Resolution.  BRZ shall invoke formal dispute resolution procedures, within the time period provided in the preceding Paragraph, by serving on the United States a written Statement of Position regarding the matter in dispute. The Statement of Position shall include, but need not be limited to, any factual data, analysis, or opinion supporting BRZ's position and any supporting documentation relied upon by BRZ.

64.   The United States shall serve its Statement of Position within 45 Days of receipt of BRZ's Statement of Position. The United States' Statement of Position shall include, but need not be limited to, any factual data, analysis, or opinion supporting that position and any supporting documentation relied upon by the United States. The United States' Statement of Position shall be binding on BRZ, unless BRZ files a motion for judicial review of the dispute in accordance with the following Paragraph.

25

65.    BRZ may seek judicial review of the dispute by filing with the Court and serving on

the United States, in accordance with Section XV (Notices) of this Consent Decree, a motion

requesting judicial resolution of the dispute.  The motion must be filed within 30 Days of receipt of

the United States' Statement of Position pursuant to the preceding Paragraph.  The motion shall

contain a written statement of BRZ's position on the matter in dispute, including any supporting

factual data, analysis, opinion, or documentation, and shall set forth the relief requested and any

schedule within which the dispute must be resolved for orderly implementation of the Consent

Decree.

66.    The United States shall respond to BRZ's motion within the time period allowed by

the Local Rules of this Court.  BRZ may file a reply memorandum, to the extent permitted by the

Local Rules.

67.    <u>Standard of Review</u>:  Except as otherwise provided in this Consent Decree, in any

dispute brought under Paragraph 63, BRZ shall bear the burden of demonstrating that its position

or action complies with this Consent Decree and better furthers the objectives of this Consent

Decree than the position advanced by the United States, and that BRZ is entitled to relief under

applicable principles of law.  The United States reserves the right to argue that its position is

reviewable only on the administrative record and must be upheld unless arbitrary and capricious or

otherwise not in accordance with law, and BRZ reserves the right to oppose this position.

## XII  INFORMATION COLLECTION AND RETENTION

68.    The United States and its representatives, including attorneys, contractors, and

consultants, shall have the right of entry into the Sauget Facility, at all reasonable times, upon

presentation of credentials, to:

A.    monitor the progress of activities required under this Consent Decree;

26

        B.      verify any data or information submitted to the United States in accordance with the terms of this Consent Decree;

        C.      obtain samples and, upon request, splits of any samples relevant to this Consent Decree taken by BRZ or its representatives, contractors, or consultants;

        D.      obtain documentary evidence, including photographs and similar data relevant to this Consent Decree; and

        E.      assess BRZ's compliance with this Consent Decree.

69.     Upon request, BRZ shall provide EPA and its authorized representatives splits of any samples relevant to this Consent Decree taken by BRZ. Upon request, EPA shall provide BRZ splits of any samples taken by EPA relevant to this Consent Decree

70.     Until five years after the termination of this Consent Decree, BRZ shall retain, and shall instruct its contractors and agents to preserve, all non-identical copies of all documents, records, or other information (including documents, records, or other information in electronic form) in its or its contractors' or agents' possession or control, or that come into its or its contractors' or agents' possession or control, and that relate in any manner to BRZ's performance of its obligations under this Consent Decree. This information-retention requirement shall apply regardless of any contrary corporate or institutional policies or procedures. At any time during this information-retention period, upon request by the United States, BRZ shall provide copies of any documents, records, or other information required to be maintained under this Paragraph.

71.     At the conclusion of the information-retention period provided in the preceding Paragraph, BRZ shall notify the United States at least 90 Days prior to the destruction of any documents, records, or other information subject to the requirements of the preceding Paragraph and, upon request by the United States, BRZ shall deliver any such documents, records, or other

information to EPA.  BRZ may assert that certain documents, records, or other information is privileged under the attorney-client privilege or any other privilege recognized by federal law.  If BRZ asserts such a privilege, it shall provide the following:  (1) the title of the document, record, or information; (2) the date of the document, record, or information; (3) the name and title of each author of the document, record, or information; (4) the name and title of each addressee and recipient; (5) a description of the subject of the document, record, or information; and (6) the privilege asserted by BRZ.  However, no documents, records, or other information created or generated pursuant to the requirements of this Consent Decree shall be withheld on grounds of privilege.

72.     BRZ may also assert that information required to be provided under this Section is protected as Confidential Business Information ("CBI") under 40 C.F.R. Part 2.  As to any information that BRZ seeks to protect as CBI, BRZ shall follow the procedures set forth in 40 C.F.R. Part 2.

73.     This Consent Decree in no way limits or affects any right of entry and inspection, or any right to obtain information, held by the United States pursuant to applicable federal laws, regulations, or permits, nor does it limit or affect any duty or obligation of BRZ to maintain documents, records, or other information imposed by applicable federal or state laws, regulations, or permits.

## XIII. EFFECT OF SETTLEMENT/RESERVATION OF RIGHTS

74.     This Consent Decree resolves the civil claims of the United States for the violations alleged in the Complaint filed in this action through the date of lodging.

75.     The United States reserves all legal and equitable remedies available to enforce the provisions of this Consent Decree, except as expressly stated in Paragraph 74.  This Consent

Decree shall not be construed to limit the rights of the United States to obtain penalties or injunctive relief under the Act or implementing regulations, or under other federal laws, regulations, or permit conditions, except as expressly specified in Paragraph 74. The United States further reserves all legal and equitable remedies to address any imminent and substantial endangerment to the public health or welfare or the environment arising at, or posed by, the Sauget Facility, whether related to the violations addressed in this Consent Decree or otherwise.

76.     In any subsequent administrative or judicial proceeding initiated by the United States for injunctive relief, civil penalties, or other appropriate relief relating to the Sauget Facility, BRZ shall not assert, and may not maintain, any defense or claim based upon the principles of waiver, res judicata, collateral estoppel, issue preclusion, claim preclusion, claim-splitting, or other defenses based upon any contention that the claims raised by the United States in the subsequent proceeding were or should have been brought in the instant case, except with respect to claims that have been specifically resolved pursuant to Paragraph 74 of this Section.

77.     This Consent Decree is not a permit, or a modification of any permit, under any federal, State, or local laws or regulations. BRZ is responsible for achieving and maintaining complete compliance with all applicable federal, State, and local laws, regulations, and permits; and BRZ's compliance with this Consent Decree shall be no defense to any action commenced pursuant to any such laws, regulations, or permits, except as set forth herein. The United States does not, by its consent to the entry of this Consent Decree, warrant or aver in any manner that BRZ's compliance with any aspect of this Consent Decree will result in compliance with provisions of the Act, *42* U.S.C. § 7401 *et seq.*, or with any other provisions of federal, State, or local laws, regulations, or permits.

78.    This Consent Decree does not limit or affect the rights of BRZ or of the United States against any third parties, not party to this Consent Decree, nor does it limit the rights of third parties, not party to this Consent Decree, against BRZ, except as otherwise provided by law.

79.    This Consent Decree shall not be construed to create rights in, or grant any cause of action to, any third party not party to this Consent Decree.

## XIV.  COSTS

80.    The Parties shall bear their own costs of this action, including attorneys' fees, except that the United States shall be entitled to collect the costs (including attorneys' fees) incurred in any action necessary to collect any portion of the civil penalty or any stipulated penalties due but not paid by BRZ.

## XV.  NOTICES

81.    Unless otherwise specified herein, whenever notifications, submissions, or communications are required by this Consent Decree, they shall be made in writing and addressed as follows:

<u>To the United States</u>:

Bruce Gelber
Chief, Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice
Box 7611 Ben Franklin Station
Washington, D.C.  20044-7611
Re: DOJ No. 90-5-2-1-08230

<u>To EPA</u>:

Director, Air Enforcement Division
U.S. Environmental Protection Agency
MC 2242A
1200 Pennsylvania Ave. NW
Washington, D.C. 20460

Louise Gross
Office of Regional Counsel
U.S. Environmental Protection Agency, Region 5
Mail Code C-14J
77 West Jackson Blvd.
Chicago, Illinois 60604-3590

Versia Boyd
Air and Radiation Division
U.S. Environmental Protection Agency, Region 5
Mail Code AE-17J
77 West Jackson Blvd.
Chicago, Illinois 60604-3590

Daniel Schaufelberger
Environmental Scientist
U.S.EPA, Region 5
77 West Jackson Blvd. (AE-17J)
Chicago, IL 60604-3590

To BRZ:

Michael Altepeter
Environmental Manager
Big River Zinc Corporation
2401 Mississippi Avenue
Sauget, Illinois 62201

82.     Any Party may, by written notice to the other Parties, change its designated notice
recipient or notice address provided above.

83.     Notices submitted pursuant to this Section shall be deemed submitted upon certified
mailing, unless otherwise provided in this Consent Decree or by mutual agreement of the Parties in
writing.

## XVI. <u>EFFECTIVE DATE</u>

84.     The Effective Date of this Consent Decree shall be the date upon which this Consent Decree is entered by the Court or a motion to enter the Consent Decree is granted, whichever occurs first, as recorded on the Court's docket.

## XVII. <u>RETENTION OF JURISDICTION</u>

85.     The Court shall retain jurisdiction over this case until termination of this Consent Decree, for the purpose of resolving disputes arising under this Decree or entering orders modifying this Decree, pursuant to Sections XI and XVIII and Paragraph 13, or effectuating or enforcing compliance with the terms of this Decree.

## XVIII. <u>MODIFICATION</u>

86.     The terms of this Consent Decree, including any attached appendices, may be modified only by a subsequent written agreement signed by all the Parties.  Where the modification constitutes a material change to this Decree, it shall be effective only upon approval by the Court.

87.     Any disputes concerning modification of this Decree shall be resolved pursuant to Section XI (Dispute Resolution) of this Decree, provided, however, that, instead of the burden of proof provided by Paragraph 67, the Party seeking the modification bears the burden of demonstrating that it is entitled to the requested modification in accordance with Federal Rule of Civil Procedure 60(b).

## XIX. <u>TERMINATION</u>

88.     BRZ may serve upon the United States a request a Request for Termination after it has:

   A.     paid the civil penalty and any accrued stipulated penalties as required by this Consent Decree;

     B.    demonstrated compliance with this Consent Decree by either:

        1.    meeting the following requirements with respect to Zinc Roasting Operations: (i) installing a Scrubber System that meets the design specifications in Appendix A; (ii) completing the Test-and-Set Protocol at Appendix B, (iii) incorporating the requirements set forth in Paragraph 23 in an amendment to the Illinois State Implementation Plan or in a construction permit issued by Illinois EPA that is federally enforceable, (iv) incorporating the requirements set forth in Paragraph 33 in BRZ's Title V permit, and (v) complying with the Long-Term Emission Limit and the NSPS Emission Limit for Roasters at Primary Zinc Smelters for a period of at least three years; or

        2.    meeting the following requirements with respect to the permanent shutdown of Zinc Roasting Operations: (i) taking all actions necessary to surrender all permits (or portions of permits) relating to Zinc Roasting Operations, and (ii) surrendering all pollution credits relating to Zinc Roasting Operations; and

     C.    completed all other actions required by this Consent Decree.

89.    In its Request for Termination, BRZ shall include all supporting information necessary to demonstrate that it has met the conditions for termination set forth in the preceding Paragraph 88.

90.    Following receipt by the United States of BRZ's Request for Termination, the Parties shall confer informally concerning the Request and any disagreement that the Parties may have as to whether BRZ has satisfactorily complied with the requirements for termination of this Consent Decree. If the United States agrees that the Decree may be terminated, the Parties shall submit, for the Court's approval, a joint stipulation terminating the Decree.

91.    If the United States does not agree that the Decree may be terminated, BRZ may invoke Dispute Resolution under Section XI of this Decree.  However, BRZ shall not seek Dispute Resolution of any dispute regarding termination, under Paragraph 63 of Section XI, until 70 Days after service of its Request for Termination.

92.    <u>Resort to Enforcement Under this Consent Decree</u>.  Notwithstanding termination of this Decree in accordance with this Section, if enforcement of one or more of the following requirements cannot be pursued by the United States or the State of Illinois under the Illinois State Implementation Plan or any federally enforceable permit, then each such requirement shall survive termination and may be enforced under the terms of this Consent Decree at any time.

i.    The requirement to comply with the NSPS Emission Limit for Roasters at Primary Zinc Smelters described in Paragraph 20;

ii.    The requirement to comply with the Long-Term Emission Limit set by EPA in accordance with the Test-and-Set Protocol in Appendix B;

iii.    The requirement to comply with any other applicable emission limit that may apply under Paragraph 22.

iv.    The requirement to comply with the CEMS operation and maintenance requirements in Subsection D.

v.    The requirement to submit annual reports to Illinois EPA containing the same information that BRZ is required to provide under Section VIII (Reporting Requirements), except for information identified in Paragraphs 36(a) and (b).

## XX. **PUBLIC PARTICIPATION**

93.    This Consent Decree shall be lodged with the Court for a period of not less than 30 Days for public notice and comment in accordance with 28 C.F.R. § 50.7.  The United States

reserves the right to withdraw or withhold its consent if the comments regarding the Consent

Decree disclose facts or considerations indicating that the Consent Decree is inappropriate,

improper, or inadequate. BRZ consents to entry of this Consent Decree without further notice and

agrees not to withdraw from or oppose entry of this Consent Decree by the Court or to challenge

any provision of the Decree, unless the United States has notified BRZ in writing that it no longer

supports entry of the Decree.

## XXI. SIGNATORIES/SERVICE

94.     Each undersigned representative of BRZ and the Assistant Attorney General for the

Environment and Natural Resources Division of the Department of Justice certifies that he or she is

fully authorized to enter into the terms and conditions of this Consent Decree and to execute and

legally bind the Party he or she represents to this document.

95.     This Consent Decree may be signed in counterparts, and its validity shall not be

challenged on that basis. BRZ agrees to accept service of process by certified mail with respect to

all matters arising under or relating to this Consent Decree and to waive the formal service

requirements set forth in Rules 4 and 5 of the Federal Rules of Civil Procedure and any applicable

Local Rules of this Court including, but not limited to, service of a summons.

## XXII. INTEGRATION

96.     This Consent Decree constitutes the final, complete, and exclusive agreement and

understanding among the Parties with respect to the settlement embodied in the Decree and

supercedes all prior agreements and understandings, whether oral or written, concerning the settle-

ment embodied herein. Other than deliverables that are subsequently submitted and approved

pursuant to this Decree, no other document, nor any representation, inducement, agreement,

understanding, or promise, constitutes any part of this Decree or the settlement it represents, nor shall it be used in construing the terms of this Decree.

## XXIII. **FINAL JUDGMENT**

97.    Upon approval and entry of this Consent Decree by the Court, this Consent Decree shall constitute a final judgment of the Court as to the United States and BRZ.

## XXIV. **APPENDICES**

98.    The following appendices are attached to and  part of this Consent Decree:

"Appendix A" is the Process Design Specifications for the Scrubber System

"Appendix B" is the Test-and-Set Protocol

"Appendix C" is the Method for Computation of the 365-Day Rolling Average

Dated and entered this 30th day of June , 2010 .

UNITED STATES DISTRICT COURT JUDGE
Southern District of Illinois

36

THE UNDERSIGNED PARTY enters into this Consent Decree providing for injunctive relief and civil penalties in the matter of <u>United States v. Big River Zinc Corporation</u>, relating to the primary zinc smelter in Sauget, Illinois.

FOR THE UNITED STATES

W. BENJAMIN FISHEROW
Deputy Chief
Environmental Enforcement Section
Environment and Natural Resources Division

JOSEPH W.C. WARREN
Trial Attorney
Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice
P.O. Box 7611
Washington, DC  20044
(202) 616-1303/616-6584 (FAX)

A. COURTNEY COX
United States Attorney
Southern District of Illinois

WILLIAM E. COONAN
Assistant U.S. Attorney
Southern District of Illinois
Nine Executive Drive
Fairview Heights, Illinois 62208-1344
(618) 628-3700

FOR THE UNITED STATES ENVIRONMENTAL
PROTECTION AGENCY


BHARAT MATHUR
Acting Regional Administator
U.S. Environmental Protection Agency, Region 5
77 West Jackson Boulevard
Chicago, IL 60604


ROBERT A. KAPLAN
Regional Counsel
U.S. Environmental Protection Agency, Region 5
77 West Jackson Boulevard
Chicago, IL 60604

38

THE UNDERSIGNED PARTY enters into this Consent Decree providing for injunctive relief and civil penalties in the matter of <u>United States v. Big River Zinc Corporation</u>, relating to the primary zinc smelter in Sauget, Illinois

FOR BIG RIVER ZINC CORPORATION

GEORGE OBELDOBEL
President
Big River Zinc Corporation
2401 Mississippi Avenue
Sauget, Illinois 62201

39

# APPENDIX A

## PROCESS DESIGN SPECIFICATIONS FOR THE SCRUBBER SYSTEM

1.      In the event that BRZ decides to resume Roasting Operations, BRZ shall submit to EPA for review and approval process design specifications for a Scrubber System to control emissions of $SO_2$ from the Sauget Facility.  The Scrubber System shall be designed:

a.      to achieve a Stack Gas Sulfur Dioxide concentration equal to, or less than, 100 ppmvd for the operation of one roaster and 200 ppmvd for the operation of two roasters calculated on a 365-Day Rolling Average basis;

b.      to comply with  the NSPS Emission Limit for Roasters at Primary Zinc Smelters;

c.      to comply with any other emission limits that may apply under the Clean Air Act when BRZ resumes its roasting operations, including where such emission limits are more stringent than those in Subparagraphs "a" and "b" above;

d.      to operate with a pressure drop of 8 to 10 inches of water, and

e.      to use either zinc oxide calcine or a zinc oxide slurry as its reagent.  In choosing between these two reagents, BRZ may take into account the cost of the material, its performance as a reagent, and its availability, provided that BRZ's choice is subject to EPA review and approval.

2.      In no event shall BRZ be required to design and install a two-stage Scrubber System.

3.      The proposed process design specifications submitted by BRZ shall, at a minimum, include:

A.      Proposed optimal reagent (calcine or zinc oxide slurry) circulation rate (gallons per minute);

B.      Maximum reagent circulation rate;

C.      Designed gas-side pressure drop for the Scrubber System;

D.      Scaled engineering drawings of the proposed Scrubber System;

E.      Description and scaled engineering drawings of the proposed scrubber reagent feed system (i.e., method of conveying reagent to scrubber);

F.      Proposed liquid-to-gas (L/G) ratio of the scrubber system;

G.      Proposed reagent pump power (in Horsepower);

H.      Oxidation Blower power (in Horsepower);

I.      Outlet gas flow rate (acfm); and

J.      Reagent usage rate (lbs/hr).

4.      BRZ may also assert that information required to be provided under this Appendix A is protected as Confidential Business Information ("CBI") under 40 C.F.R. Part 2.  As to any information that BRZ seeks to protect as CBI, BRZ shall follow the procedures set forth in 40 C.F.R. Part 2.

5.      No later than 60 Days after receipt of the proposed process design specifications, EPA shall approve or disapprove the specifications, in whole or in part, in accordance with Section V.E of the Consent Decree.   In the event that EPA does not provide any comments on the proposed specifications at the end of this 60-Day period, the proposed specifications shall be

deemed "approved" and BRZ may proceed with the installation of the scrubber in accordance with the proposed design.

6.      If EPA disapproves the proposed specifications in whole or in part, BRZ must resubmit the proposed specification for review and approval in accordance with Section V.E. of the Consent Decree no later than 45 Days after receipt of EPA's disapproval.

## APPENDIX B

## TEST-AND-SET PROTOCOL

1.      In the event that BRZ resumes its Roasting Operations, BRZ shall comply with

the NSPS Emission Limit for Roasters at Primary Zinc Smelters.   The purpose of this Test-and-

Set Protocol is to set forth the procedure for establishing a second emission limit – the "Long-

Term Emission Limit" – that will be binding upon BRZ in addition to the NSPS Emission Limit

for Roasters at Primary Zinc Smelters.

2.      BRZ shall comply with the requirements of provisions of Paragraph 4

(Optimization Requirements), Paragraph 5 (Demonstraton Requirements) and Paragraph 6

(Setting of Emission Limits), unless and until BRZ agrees to comply with the Long-Term

Emission Limit in Paragraph 3 (Compliance with Design Limit).

3.      <u>Compliance with Design Limit</u>

        a.      No later than 120 days after the Startup of the Scrubber System, BRZ may

notify EPA of BRZ's agreement to limit $SO_2$ emissions from Zinc Roasting Operations at the

Sauget Facility to a Stack Gas Sulfur Dioxide concentration of 100 ppmvd for the operation of

one Roaster and 200 ppmvd for the operation of two Roasters on a 365-Day Rolling Average

basis.

        b.      If BRZ provides notice to EPA in accordance with the preceding

Paragraph, BRZ will not be required to comply with the optimization and demonstration

requirements set forth below in Paragraphs 4 and 5, below.  Instead, EPA shall set the Long-

Term Emission Limit at a Stack Gas Sulfur Dioxide concentration of 100 ppmvd for the

operation of one Roaster and 200 ppmvd for the operation of two Roasters on a 365-Day Rolling

Average basis.  BRZ shall comply with this Long-Term Emission Limit as of the date that BRZ

gave notice of its intent to comply with the limit.

     4.    <u>Optimization Requirements</u>

     a.    Immediately after installation and startup of the Scrubber System, BRZ

will conduct a 3-month study to optimize performance of the Scrubber System to minimize $SO_2$

emissions and identify optimal operating conditions so as to achieve an emission limit of 100

ppmvd for the operation of one Roaster and 200 ppmvd for the operation of two Roasters

on a 365-Day Rolling Average basis.

     b.    BRZ will conduct the optimization study on one or both Roasters using the

reagent material (zinc oxide calcine or zinc oxide slurry) approved by EPA in accordance with

Appendix A.

     c.    During the optimization study, BRZ will evaluate the effect of operating

parameters on $SO_2$ emissions, will monitor $SO_2$ emissions and the operating parameters to

identify optimum operating levels for the parameters that minimize $SO_2$ emissions, and will

operate the Scrubber System in a way that minimizes $SO_2$ emissions.  In conducting this study,

BRZ shall, at a minimum, track the following operating parameters.

     1.    Reagent (zinc oxide calcine or zinc oxide slurry) circulation rate

(gallons per minute);

     2.    Gas-side pressure drop for the scrubber system;

     3.    Hourly scrubber inlet $SO_2$ concentration (ppmvd);

     4.    Hourly scrubber outlet $SO_2$ concentration (ppmvd);

     5.    Liquid-to-gas (L/G) ratio of the scrubber system;

     6.    Outlet gas flowrate (acfm); and

      7.      Reagent usage rate (lbs/hr).

    d.      By no later than 120 Days after Startup of the Scrubber System, BRZ shall submit a report to EPA that describes the results of optimization study and identifies the optimal operating levels for use in a demonstration period. In the optimization study report, BRZ will submit a protocol for demonstration of the Scrubber System at the optimized operating levels using the approved reagent (zince oxide calcine or zinc oxide slurry) over a demonstration period of 545 Operating Days.

    e.      EPA shall approve or disapprove the report and the proposed demonstration protocol, in whole or in part, in accordance with Section V.E of the Consent Decree.

    f.      If EPA disapproves of the report or the proposed demonstration protocol in whole or in part, BRZ must resubmit the disapproved portion of the report or the proposed demonstration protocol for review and approval in accordance with Section V.E of the Consent Decree no later than 45 Days after receipt of EPA's disapproval.

    5.      <u>Demonstration Requirements</u>

    a.      Upon approval by EPA of the demonstration protocol, BRZ shall conduct a demonstration of the Scrubber System in accordance with the approved demonstration protocol. The demonstration period shall be conducted over the course of 545 Operating Days. Beginning on the 365th Operating Day of the demonstration period, BRZ shall compute on a daily basis the 365-Day Rolling Average of the Stack Gas Sulfur Dioxide concentration using the method set forth in Appendix C.

b.    During the demonstration period, BRZ shall continue to evaluate the effect of operating parameters on $SO_2$ emissions and will operate at the optimal operating levels for minimizing $SO_2$ emissions for those parameters that BRZ can control.

c.    No later than 30 Days after the completion of the 545-Day period set forth in Subparagraph "a" of this Paragraph, BRZ shall submit a demonstration study report, which shall identify the relevant operating parameters and the maximum reduction of $SO_2$ emissions from each Roaster. The report shall also include, at a minimum, the following information:

1.    Optimal reagent (calcine or zinc oxide slurry) circulation rate (gallons per minute);

2.    Maximum reagent circulation rate;

3.    Gas-side pressure drop for the scrubber system;

4.    Hourly scrubber inlet $SO_2$ concentration (ppmvd);

5.    Hourly scrubber outlet $SO_2$ concentration (ppmvd);

6.    Final scaled engineering drawings of the scrubber system;

7.    Description and scaled engineering drawings of the implemented scrubber reagent feed system (i.e., method of conveying reagent to scrubber);

8.    Optimal liquid-to-gas (L/G) ratio of the scrubber system;

9.    Reagent pump power (in Horsepower);

10.   Oxidation Blower power (in Horsepower);

11.   Outlet gas flowrate (acfm);

12.   Reagent usage rate (lbs/hr); and

13.   The 365-Day Rolling Average for each Day from the 365th Operating Day until the end of the demonstration period.

BRZ may also assert that information required to be provided under this Subparagraph is protected as Confidential Business Information ("CBI") under 40 C.F.R. Part 2. As to any information that BRZ seeks to protect as CBI, BRZ shall follow the procedures set forth in 40 C.F.R. Part 2.

      d.      Simultaneously with submitting the demonstration study report, BRZ shall propose a Long-Term Emission Limit for $SO_2$ based on a 365-Day Rolling Average. For each Roaster, BRZ shall comply with the proposed Long-Term Emission Limit beginning immediately upon submission of the Demonstration Study report.   At the same time, BRZ shall continue to comply with the NSPS Emission Limit for Roasters for Primary Zinc Smelters.

      6.    <u>Setting of Emission Limits</u>

      a.      EPA will use data collected during the optimization period and the demonstration period, as well as all other available and relevant information, to set a Long-Term Emission Limit for $SO_2$ emissions from BRZ's Roasters on a 365-Day Rolling Average basis. Regardless of whether EPA accepts BRZ's proposed limit or selects a different limit, EPA will base its determination on (1) the level of performance during the optimization and demonstration period, (2) a reasonable certainty of compliance assuming good operation and maintenance of BRZ's equipment, and (3) other available and relevant information. EPA may select an emission limit on a 365-Day Rolling Average basis that is more (or less) stringent than 100 ppmvd.

      c.      No later than 30 Days after notification of the Long-Term Emission Limit selected by EPA, BRZ shall comply with this limit unless BRZ invokes the dispute resolution process in accordance with Section XI (Dispute Resolution) of this Consent Decree.  If BRZ invokes the dispute resolution process, BRZ shall continue to comply with the Long-Term

Emission Limit that it proposed pursuant to Paragraph 5.d of this protocol until the dispute is resolved.

      d.     If BRZ prevails in its challenge to the emission limit selected by EPA, EPA shall select a new Long-Term Emission Limit based upon the same factors set forth in Subparagraph b of this Paragraph. No later than 30 Days after notification of this new limit selected by EPA, BRZ shall comply with the Long-Term Emission Limit unless BRZ again invokes the dispute resolution process, in which case BRZ shall continue to comply with the emission limit that it proposed pursuant to Paragraph 5.d of this protocol until a final Long-Term Emission Limit is established.

## APPENDIX C

## COMPUTATION OF 365-DAY ROLLING AVERAGE

For the purposes of this Consent Decree, an emission limit based upon a "365-Day Rolling Average" shall be expressed as parts per million volume-dry (ppmvd) and calculated in accordance with the following procedure:  first, compute the arithmetic mean of the Stack Gas Sulfur Dioxide concentrations for an Operating Day; second, sum this Operating Day concentration with the arithmetic mean concentration for each of the preceding 364 Operating Days; and lastly, divide the total 365 Operating Day concentrations by 365.  A new "365-Day Rolling Average" sulfur dioxide concentration shall be calculated for each new Operating Day. Each 365-Day Rolling Average concentration shall include all concentrations of $SO_2$ emitted during the 365-Day period, including those emitted during periods of startup, shutdown, and malfunction as defined in 40 C.F.R. § 60.2.